UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>TERANCE MORICE HIGHBULL,<br><br>Defendant. | 4:16-CR-40029-01-KES<br><br>ORDER ADOPTING<br>REPORT AND RECOMMENDATION<br>AS MODIFIED AND DENYING<br>MOTION TO SUPPRESS |

Defendant, Terance Morice Highbull, is charged with sexual exploitation of a child in violation of 18 U.S.C. §§ 2251(a) and 2251(e). Docket 6. Highbull moves to suppress all evidence obtained from the search of his car on February 9, 2015, and all evidence obtained from a search of his cellular phone on May 21, 2015. Docket 31. The court referred the motion under 28 U.S.C. § 636(b)(1)(B) to United States Magistrate Judge Veronica L. Duffy for a report and recommendation.

Magistrate Judge Duffy held an evidentiary hearing on March 2, 2017. On March 14, 2017, Magistrate Judge Duffy issued a report and recommendation denying Highbull's motion in full. Docket 40. Highbull filed objections to the report and recommendation. Docket 42. The report and recommendation is adopted as modified by this opinion.

## LEGAL STANDARD

This court's review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure. The court reviews de novo any objections to the magistrate judge's recommendations with respect to dispositive matters that are timely made and specific. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Because motions to suppress evidence are considered dispositive matters, a magistrate judge's recommendation regarding such a motion is subject to de novo review. 28 U.S.C. § 636(b)(1)(A); *see also United States v. Raddatz*, 447 U.S. 667, 673 (1980). In conducting a de novo review, this court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United States v. Craft*, 30 F.3d 1044, 1045 (8th Cir. 1994).

## BACKGROUND

Highbull does not object to Magistrate Judge Duffy's findings of fact. Docket 42 at 2. A full recitation of the facts can be found in Magistrate Judge Duffy's report and recommendation. Docket 40. Here, the court summarizes the facts relevant to Highbull's objections to the report and recommendation:

The Sioux Falls Police Department received a call on February 9, 2015, that a family dispute was in progress at a Sioux Falls apartment. Officer Andrew Mattson responded to the call. When Officer Mattson arrived on scene, Michelle Janis waived him down. Janis told Officer Mattson that Highbull ran behind the apartment. Officer Mattson asked why Highbull was running, and

Janis responded, "He knows I turned him in." Officer Mattson asked what was happening, and Janis replied, "I wanted to sign a complaint on him. He went and had pictures of my daughter naked, and she's only 13. And I told him, he was just here, and he looked out the door and he seen you guys and he took off running."

Officer Mattson continued to talk with Janis as Janis entered her apartment and checked on the children in the apartment. Officer Mattson remained in the hallway with the door open. Janis then said, "That's his car running out there so you better watch his car." Officer Mattson told dispatch and his cover officer who was in route to the scene that Highbull ran out the back door.

Janis and Officer Mattson then went out to Highbull's car. Janis turned off the car and explained that Highbull was picking up his daughter. Janis told Officer Mattson she had her son call the police. Janis then went back into her apartment to lock her back door in case Highbull returned. Janis then stepped outside to talk with Officer Mattson. Janis explained that Highbull was harassing her because Janis refused to let Highbull see their infant daughter. Earlier Highbull had told Janis's son that Highbull had had sexual contact with Janis's 13 year old daughter (who was not his child). Janis had started looking through Highbull's phone and had seen nude pictures of her daughter.

At this point, Officer Mattson asked, "Do you have the phone?" Janis responded by walking to Highbull's car and saying, "Um, I don't know if it's this . . . I think it's . . . I don't know . . . I think he does have one. He probably got

3

rid of it or whatever . . . the one I went through had pictures of my daughter." Janis then got into Highbull's car and withdrew Highbull's white Samsung Galaxy cell phone. Janis told Officer Mattson, "You see, I don't know how to get into 'em, but I just so happened to look in the gallery, and it showed up." Officer Mattson asked if this was the correct phone, and Janis replied, "I'm pretty sure it is." Janis added, "I mean I've never seen it, or seen anything of it, but I know that I saw pictures of my naked, of my daughter naked, and she's only 13 years old." Janis and Officer Mattson continued to talk, and Janis eventually handed Officer Mattson the phone. Officer Mattson looked through the phone's gallery and showed Janis some of the photographs. Officer Matson asked if any of the photographs were some of the photographs Janis had seen.

Janis replied, "No. These were in the phone—I mean, I don't know how they popped up, but it just popped up. But deep in that phone where, in like passwords and s—t I can't get into. 'Cause when I seen 'em he took his phone." Officer Mattson asked Janis what she meant by deeper in the phone, and Janis replied, "There . . . he's got a lot of pictures on Google and he's got passwords for all of 'em." Officer Mattson then asked how many pictures were in the phone, and Janis replied that there were about six pictures in the phone. Janis said that her daughter was nude in each picture and that her daughter was sitting on Janis's bed.

Officer Mattson said he could not find the pictures on the phone and asked for more information about Highbull. Officer Mattson explained he could not arrest Highbull solely on Janis's statements, and Officer Mattson took the

4

phone for further investigation. Officer Mattson entered the phone into evidence at police headquarters and completed a written report summarizing his investigation at Janis's apartment.

On February 11, 2015, Sergeant Jessica Speckmeier with the Sioux Falls Police Department's Crimes Against Persons Unit began her investigation of Highbull. Sergeant Speckmeier, who was a detective at the time, contacted Janis to ask follow up questions. Janis explained that the photographs of her daughter were not in the phone's gallery, but in a hidden application. Sergeant Speckmeier thought this was both plausible and feasible given the type of phone Highbull owned and Janis's description of how she found the photographs. After their initial conversation, Sergeant Speckmeier attempted to contact Janis again by phone, voicemail, and in person. Janis never responded.

On May 21, 2015, Sergeant Speckmeier prepared an affidavit to apply for a search warrant for Highbull's phone. Sergeant Speckmeier reviewed Officer Mattson's written report and her own notes from her conversation with Janis. She did not speak with Officer Mattson or review the patrol car footage from Janis's apartment. A state court judge issued the search warrant in May of 2015. Eleven months later, in April of 2016, a federal court issued a search warrant for a search of Highbull's phone for evidence of sexual exploitation of a child.

At the hearing before Magistrate Judge Duffy, Sergeant Speckmeier admitted that her affidavit did not include the following facts: (1) Officer Mattson did not find the photographs of Janis's daughter when he looked at

5

the phone; (2) Janis stated the photographs were in a hidden application; (3) Janis refused to cooperate with police after her initial conversation with Sergeant Speckmeier and then Janis could not be found; and (4) Janis's daughter denied involvement with the pictures when confronted by Janis.

**DISCUSSION**

Highbull raises three primary objections to the report and recommendation. First, Highbull argues that Janis acted as a government agent when she retrieved Highbull's phone from his car. Second, Highbull argues Sergeant Speckmeier committed a *Franks* violation when she prepared her affidavit for a search warrant. Third, Highbull argues that the federal search warrant issued in this case does not purge the taint of the earlier searches and that the good faith exception articulated in *Leon* does not apply. Each argument is addressed below.

**I. Janis was not acting as a government agent.**

The Fourth Amendment protects people from unreasonable searches and seizures by the government. Searches by private citizens, however, are not covered under the amendment unless the citizen was acting as a government agent. *United States v. Smith*, 383 F.3d 700, 705 (8th Cir. 2004). The court considers a variety of factors when determining whether a private citizen acted as a government agent. *Id.* "Chief among these are whether the government had knowledge of and acquiesced in the intrusive conduct; whether the citizen intended to assist law enforcement agents or instead acted to further [her] own purposes; and whether the citizen acted at the government's request." *Id.*

(citing *United States v. Malbrough*, 922 F.2d 458, 461-62 (8th Cir. 1990)); *see also United States v. Wiest*, 596 F.3d 906, 910 (8th Cir. 2010). When determining whether or not private citizens acted in their own interests, the Eighth Circuit Court of Appeals has stated that even if a "private citizen is motivated in part by a desire to aid law enforcement," that "does not in and of itself transform her into a government agent." *Smith*, 383 F.3d at 705 (citing *Malbrough*, 922 F.2d at 461-62). The defendant must prove by a preponderance of the evidence that the private party acted as a government agent. *United States v. Reed*, 15 F.3d 928, 931 (9th Cir. 1994); *United States v. Feffer*, 831 F.2d 734, 739 (7th Cir. 1987).

In *Smith*, police officers were conducting a "parcel interdiction operation" at a FedEx facility. *Id.* at 703. Police came across a suspicious package during their operation and conducted a dog sniff on the package. *Id.* The dog alerted, so police took the package to the FedEx facility manager. *Id.* The police officer informed the manager that he suspected the package contained drugs. *Id.* The manager asked if she should open the package, and the officer responded that if the manager wanted to open the package that would be fine. The Eighth Circuit held that even though the police had knowledge of and acquiesced to the intrusive conduct, the FedEx manager was not a government agent because the police informed her that the decision to open the package was hers alone to make. *Id.* at 705.

In *Wiest*, police were investigating the robbery of a bank and two credit unions. *Wiest*, 596 F.3d at 909. The police learned that the defendant was

7

staying at a house owned by his girlfriend's stepmother. *Id.* As the police were questioning the stepmother, they asked if the defendant had any belongings in her home. *Id.* The stepmother voluntarily gave police the defendant's clothes that were in the laundry room. *Id.* The Eighth Circuit affirmed the district court's finding that the stepmother was not a government actor because there was conflicting evidence about her intent and whether she acted at the government's request. *Id.* The stepmother also testified in court that "she, unprompted, turned [defendant's] clothes over to the police because she didn't want them left in her home." *Id.* The Eighth Circuit explained that "[i]n light of all the circumstances, [the stepmother] was not an instrument or agent of the government for Fourth Amendment purposes." *Id.*

Highbull's primary objection to the report and recommendation is that Janis's actions "stemmed from [her] desire to assist law enforcement in taking *criminal* action against Highbull." Docket 42 at 4. Highbull argues Janis's intent to assist law enforcement is clear based on her statements to Officer Mattson. Janis told Officer Mattson that "[h]e knows I turned him in" and that she "wanted to sign a complaint on him." Although Janis made these statements, the Eighth Circuit has explained that private citizens may have more than one reason for their actions, and even though Janis did not testify at the motion hearing, the court can infer from the facts that Janis would have personal reasons for her actions. It is not a stretch to believe that Janis's actions stemmed from a desire to shield her 13 year old daughter from sexual exploitation and a desire to keep intimate, private photographs from public

8

view. Similar to the private party in Smith, "[t]here is no evidence that [Janis] felt she was obligated to [retrieve the phone]." *Smith*, 383 F.3d at 705.

Highbull also argues that Janis performed the search at the government's request because Officer Mattson asked Janis if she had the phone. This fact situation is similar to *Wiest*, where police asked a home's owner whether the defendant had any items in the home. *Wiest*, 596 F.3d at 910. In *Wiest*, the Eighth Circuit affirmed the district court's factual finding that the home owner's act was a "voluntary and unsolicited act." *Id.* The fact the police officer asked the home owner a question did not transform her into a government actor. The same reasoning applies here. Highbull has not met his burden of proving Janis was a government actor.

## II. Sergeant Speckmeier's affidavit did not deliberately or recklessly omit facts.

Highbull challenges the state search warrant for his phone by arguing that the affidavit submitted by Sergeant Speckmeier to obtain the warrant deliberately or recklessly omitted facts. In *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978), the United States Supreme Court held that defendants could challenge the validity of a search warrant by attacking the veracity of the affidavit supporting the application for the warrant. *Id.* The Supreme Court wrote:

> [W]e hold that, where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's

> request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Id.* The same standard is used for omissions. *United States v. Buchanan*, 574 F.3d 554, 561 (8th Cir. 2009) (citing *United States v. Humpphreys*, 982 F.2d 254, 258 n. 2 (8th Cir. 1992); *Franks*, 438 U.S. at 171-72).

Highball's primary argument is that Sergeant Speckmeier's affidavit omitted two key facts when viewed in tandem: (1) Janis first told Officer Mattson that the photographs were in the phone's gallery and (2) Officer Mattson did not find any of the photographs when he reviewed the phone's gallery. Highbull notes this is inconsistent with Janis's later statements that the photograph was in a hidden application. Highbull argues that Sergeant Speckmeier "should have been clued in to the fact that Janis made shifting statements regarding where the photos were on the phone." Docket 42 at 8.

This court agrees with Magistrate Judge Duffy's determination that "Mr. Highbull has failed to demonstrate Det. Speckmeier acted intentionally or recklessly as to the admitted omissions from her search warrant affidavit." Docket 40 at 22. As Magistrate Judge Duffy noted in her report and recommendation, Sergeant Speckmeier "did not view it as relevant to the probable cause determination 'how' Ms. Janis viewed the photos on Mr. Highbull's phone, only that she *did* view them," and "[t]he crucial information to Det. Speckmeier was that Ms. Janis' description was rich in

10

corroborating detail." *Id.* The court finds Sergeant Speckmeier's testimony credible and also finds that the omissions were not intentional or reckless.

Furthermore, even if the court did find the omissions reckless, adding the omissions into the affidavit does not defeat probable cause. Highbull argues that "where officers have information that contraband is in a certain location, their failure to find the contraband in that location can defeat probable cause." Docket 42. Highbull cites to two cases for this proposition: *United States v. Jacobs*, 986 F.2d 1231, 1234-35 (8th Cir. 1993) and *United States v. Hughez-Ibarra*, 954 F.2d 546, 551 (9th Cir. 1992). Both cases are distinguishable, however, because both courts were discussing physical evidence, not electronically stored information. The key fact in this case is that Janis said that she viewed the pictures on Highbull's phone. The fact that she cannot specifically state the file location does not defeat the probable cause determination. Even when adding all of the omitted facts to Sergeant Speckmeier's affidavit, probable cause still existed to issue the warrant.

**III.     The court does not need to address the federal search warrant.**

Highbull objects to the report and recommendation's conclusions that the federal warrant purged the taint of any earlier illegal search and that the *Leon* good faith exception applies to this case. Because of the court's prior rulings on Highbull's objections, it is unnecessary to rule on these issues, and the court declines to do so.

11

**CONCLUSION**

Both the search of Highbull's car and his phone are constitutional. Janis was not acting as a government agent when she retrieved Highbull's phone from his car, so the Fourth Amendment does not apply. Sergeant Speckmeier also did not intentionally or recklessly omit facts from her affidavit, so Highbull's challenge to the state court search warrant is overruled. Thus, it is

ORDERED that the report and recommendation (Docket 40) denying Highbull's motion to suppress is adopted as modified by this opinion.

DATED this 14th day of April, 2017.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE